IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

CLIFTON T. TORREY, SR.                                      PLAINTIFF

v.                                                No. 4:24CV20-DAS

VITALCORE, ET AL.                                          DEFENDANTS

## MEMORANDUM OPINION

This matter comes before the court on the *pro se* prisoner complaint of Clifton T. Torrey, Sr.,

who challenges the conditions of his confinement under 42 U.S.C. § 1983 – which provides a federal

cause of action against "[e]very person" who under color of state authority causes the "deprivation of

any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42

U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff

was incarcerated when he filed this suit.[1] The plaintiff alleges that the defendants failed to provide

him with adequate medical care.

Defendant VitalCore has moved [38] for partial summary judgment, arguing that, as to all but

one claim, the plaintiff did not exhaust his prison administrative remedies before seeking relief in this

court under 42 U.S.C. § 1983. Mississippi Department of Corrections defendants Burl Cain and

Laura Reed likewise argue in their motion [36] for summary judgment that the plaintiff failed to

exhaust his administrative remedies before filing the instant § 1983 complaint. The plaintiff has

responded to the motions, and the matter is ripe for resolution.

---

[1] *See* 42 U.S.C. § 1997e(a); *see also Williams v. Henagan,* 595 F.3d 610 (5th Cir. 2010) (PLRA applies when inmate is incarcerated at the time he files suit, even if he was released during pendency of suit).

For the reasons set forth below, the motions [36], [38] by the defendants for summary judgment will be granted, and, with the exception for the plaintiff's allegation against defendant VitalCore regarding the delay in obtaining a cancer diagnosis and treatment, his claims will be dismissed without prejudice for failure to exhaust administrative remedies.

**Factual Allegations**

**Medical Conditions and Treatment**

The plaintiff is an inmate in the custody of the Mississippi Department of Corrections ("MDOC") and filed suit under 42 U.S.C. § 1983, alleging violations of his constitutional rights. Doc. 1. At all relevant times, the plaintiff was incarcerated at the Mississippi State Penitentiary ("MSP"). *See, generally*, Doc. 1.

The plaintiff alleges that in January 2023, he became unable to eat and swallow food. Doc. 1. He alleges that VitalCore, as the MDOC medical contractor, delayed in diagnosing and treating the condition – causing his inability to eat and swallow food and drink. *Id.* He claims that on April 7, 2023, a mass was found in his esophagus. Doc. 1. He was then placed on chemotherapy beginning July 5, 2023. Doc. 1. As a result of the chemotherapy treatments, he was placed on a special diet by Dr. Antonio Castello. Doc. 1. According to the plaintiff, this included a "double portion" tray. Doc. 1. He alleges that defendant Laura Reed, as the Director of food services, was told about the requirement for double portions, but did not provide them to him. Doc. 1. According to the plaintiff, on August 17, 2023, Reed stated that he would be provided a high protein diet for one year. Doc. 1.

The plaintiff has also sued Burl Cain, through an Amended Complaint filed on March 5, 2024. Doc. 6. In the Amended Complaint, he alleges that on February 28, 2024, he was denied his final phase of chemotherapy because MDOC had not paid his chemotherapy bill. Doc. 6.

**Grievance Process**

- 2 -

Torrey's amended complaint sets forth multiple allegations regarding medical treatment:

(1)  Delay in providing examination and/or treatment for his complaint of an inability to swallow food or drink beginning after February 21, 2023;

(2)  Failure to diagnose or treat pneumonia prior to his admission to Baptist Hospital – Columbus;

(3)  Failure to replace leg braces and orthopedic shoes every two years;

(4)  Lack of treatment for back injuries since 2021;

(5)  Failure to provide a biopsy of his prostate gland in 2021;

(6)  Problems with chemotherapy between July and December 2023; and

(7)  Failure of Laura Reed to provide him with a high-protein diet without spices and onions.

Doc. 6 (Amended Complaint), p. 6-7.

Torrey submitted grievances regarding several of these claims, but he exhausted the grievance process as to only one:  delay in diagnosing cancer.  *See* Doc. 38-1, Exhibit 1, VitalCore Summary Judgment Motion.  The plaintiff submitted one grievance through MDOC's Administrative Remedy Program ("ARP") as to his medical claim regarding failure to diagnose and treat his throat problems (inability to eat):

> The unnecessary delay by MDOC's Medical Contractor to provide an upper G.I. test and follow-up; to determine the cause of Torrey's inability to eat food since February 21, 2023 and has a weight loss from 195 lbs to 170 lbs (25 lbs in less than 30 days).

*See* Affidavit of Brenetta A. Hoskins - ARP MSP-23-366, attached to the MDOC Motion [36] as Exhibit "A."  The grievance, dated March 19, 2023, was accepted into the ARP on April 3, 2023, and alleged unnecessary delays by the MDOC Medical Contractor.  *Id*.  For relief, he requested that the medical contractor secure an appointment to have tests run and any follow-up necessary to correct the problem.  *Id*.  On May 17, 2023, Mr. Dwight Moore, the medical supervisor, submitted a First Step

- 3 -

Response, stating that the plaintiff had been scheduled for outside medical appointments. *Id*. Mr. Moore also stated that he would follow up with the kitchen supervisor to ensure they are following the medical diet prescribed by the plaintiff's physicians. *Id*. On June 5, 2023, the plaintiff submitted his First Step Response Form, stating that he was not satisfied with Moore's response, and providing a three-page explanation of his dissatisfaction. *Id*. The response focused on the scheduling of outside doctor's visits. *Id*. He also stated that he should be placed on double portions with daily milk and fruit to allow him to increase his weight.[2] *Id*. On January 8, 2024, Dr. Colette Scott, MD (Site Medical Director, Mississippi State Penitentiary, Parchman) submitted the Second Step Response Form, providing a comprehensive response to Torrey's post-diagnosis concerns:

> Mr. Torrey,
>
> We have discussed face-to-face your concerns regarding your weight during your cancer treatment. You report being able to take some oral intake and this has been improving. Dr. Castillo previously ordered you a "high protein calorie diet." This specific diet is no longer offered.
>
> You currently are receiving nutrition by PEG tube feedings for Jevity 1.5 cal/fib liquid calories two cans every six hours which meals. You take this supplement four times a day. Each can contains 15 grams of protein and 355 calories. It is my understanding you are also receiving trays and consuming what you can make into soft or mechanical consistency.
>
> Your albumin levels in November 2023 are rated as within normal limits at 4.0 Your more recent weight is 146 with your BMI within normal limits.
>
> In light of the above, nutritionally you are receiving an appropriate amount of supplementation. I understand you would like your weight to be up at least 15 to 20 more pounds. I can appreciate your desire to have something more satisfying than liquid Jevity per PEG tube. However for now, there is no medical reason to provide any other supplementation.
>
> Respectfully,

---

[2] This is the first mention of "double portions." It is not contained in his initial grievance. Plaintiff never once filed an ARP grievance requesting "double portions" as relief. *See* Doc. 36-2, MDOC Defendants Motion Exhibit "B."

Dr. Collette Scott, MD

Doc. 36-1, p. 15. By the time Dr. Scott issued the Second Step Response, Torrey had been diagnosed with cancer and was undergoing treatment – which was what he had requested in the original grievance. That Second Step Response completed the grievance process as to Torrey's claim regarding the diagnosis and treatment of his throat problems.

The plaintiff mentioned neither Burl Cain nor Laura Reed in his grievance. He alleges in his Amended Complaint that Commissioner Cain was responsible for a missed chemotherapy treatment on February 28, 2024. Doc. 6. In addition, his interactions with Reed only began on or about August 17, 2023. Doc. 1. As the plaintiff's allegations against Reed and Cain arose *after* the March 19, 2023, grievance, they could not have participated in the events giving rise to the grievance. As such, this grievance does not constitute exhaustion of his administrative remedies.

### Exhaustion of Administrative Remedies

The plaintiff has failed to exhaust his administrative remedies as to all of his allegations – except his allegation regarding delay in the diagnosis and treatment of his throat issues. The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires prisoners to exhaust any available administrative remedies before filing suit under 42 U.S.C. §1983. Congress meant for the exhaustion requirement to be a tool to help weed out the frivolous claims from the colorable ones. *Jones v. Bock*, 549 U.S. 199, 203 (2007). The exhaustion requirement protects administrative agency authority, promotes efficiency, and produces "a useful record for subsequent judicial consideration." *Woodford v. Ngo*, 548 U.S.81, 89 (2006). A prisoner cannot satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal" because "*proper* exhaustion of administrative remedies is necessary." *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006) (emphasis added); *see also Johnson v. Ford*, 261 F. App'x 752, 755 (5th Cir. 2008)( the Fifth Circuit

- 5 -

takes "a strict approach" to the PLRA's exhaustion requirement)(*citing Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003)); *Lane v. Harris Cty. Med. Dep't*, No. 06-20935, 2008 WL 116333, at *1 (5th Cir. Jan.11, 2008)(under the PLRA, "the prisoner must not only pursue all available avenues of relief; he must also comply with all administrative deadlines and procedural rules"). Indeed, "a prisoner must now exhaust administrative remedies even where the relief sought – monetary damages – cannot be granted by the administrative process." *Booth v. Churner*, 532 U.S. 731, 739 (2001).

The requirement that claims be exhausted prior to the filing of a lawsuit is mandatory. *Gonzalez v. Seal*, 702 F.3d 785 (5th Cir.2012). "Whether a prisoner has exhausted administrative remedies is a mixed question of law and fact." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010). As "exhaustion is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time, . . . judges may resolve factual disputes concerning exhaustion without the participation of a jury." *Id*. at 272. A prisoner should face a significant consequence for deviating from the prison grievance procedural rules:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievance complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . . .

*Woodford* at 95.

Mississippi Code Annotated § 47-5-801 grants the Mississippi Department of Corrections the authority to adopt an administrative review procedure at each of its correctional facilities. The Mississippi Department of Corrections has thus set up an Administrative Remedy Program ("ARP") through which an inmate may seek formal review of a complaint or grievance relating to any aspect of his incarceration. This court approved the ARP Program in *Gates v. Collier*, GC 71-6-S-D (N.D. Miss. Feb. 15, 1994). *See also Marshall v. Price*, 239 F.3d 365, 2000 WL 1741549, at *1 (5th Cir.

2000). An inmate must complete two steps to exhaust the ARP process. *See Gates v. Barbour*, No. 4:71CV6-JAD, Doc. 1242 (N.D. Miss. Aug. 19, 2010); *Threadgill v. Moore*, No. 3:10CV378-TSL-MTP, 2011 WL 4388832, at *3 n.6 (S.D. Miss. July 25, 2011).

The inmate may initiate the two-step ARP grievance process by submitting his allegations in writing to the prison's Legal Claims Adjudicator within thirty days of the incident.[3] *Howard v. Epps*, No. 5:12CV61-KS-MTP, 2013 WL 2367880, at *2 (S.D. Miss. May 29, 2013). The Adjudicator initially screens the complaint and determines whether or not to accept it into the ARP process as a grievance. *Id*. The screening phase thus operates as a filter – applied before the formal grievance process begins – to remove procedurally defective or otherwise invalid grievances. As set forth above, a prisoner cannot satisfy the exhaustion requirement by filing a procedurally defective grievance or appeal. *Woodford, supra*. Hence, rejection of a grievance during the screening phase terminates the grievance – and does *not* count as exhaustion of the grievance process. *See Seales v. Shaw*, No. 5:15-CV-59-KS-MTP, 2016 WL 616749, at *3 (S.D. Miss. Jan. 26, 2016), *report and recommendation adopted sub nom. Seales v. Wilkinson Cty. Corr. Facility*, No. 5:15-CV59-KS-MTP, 2016 WL 616385 (S.D. Miss. Feb. 16, 2016) (finding rejection during initial MDOC screening process not to constitute exhaustion); *Goldmon v. Epps*, No. 4:14-CV-0112-SA-SAA, 2015 WL 5022087, at *3 (N.D. Miss. Aug. 24, 2015) (same); *see also* Robinson *v. Wheeler*, 338 Fed. Appx. 437 (5th Cir. 2009) (per curiam) (not reported) (upholding Louisiana initial screening provision of prison grievance process). However, if the defects in the original grievance were minor ("technical" or "matters of form") an inmate may submit a corrected grievance within five days of the rejection:

---

[3] If an inmate is found guilty of a prison rule violation, he may appeal that finding through the ARP process. Inmate Handbook, Section VIII, Paragraph XI. However, the appeal of a rule violation through the ARP is a one-step process (in contrast to the two-step process for resolving grievances). *Id*.

If a request is rejected for technical reasons or matters of form, the inmate shall have five days from the date of rejection to file his/her corrected grievance.

*See* https://www.mdoc.ms.gov/Inmate-Info/Documents/CHAPTER_VIII.pdf (last visited April 3, 2019)).

If accepted as a valid grievance, the complaint is forwarded to the appropriate official who then issues a First Step Response to the complaining inmate.[4] *Id.* If the inmate is unsatisfied with the First Step Response, he may continue to the Second Step by completing the appropriate ARP form and sending it to the Legal Claims Adjudicator. *Id.* The Superintendent, Warden, or Community Corrections Director will then issue a final ruling (the Second Step Response) – which completes the ARP process.[5] *Id.* If the inmate is unsatisfied with that response, he may file suit in state or federal court. *Id.*

## Discussion

Torrey failed to exhaust his prison administrative remedies in this case as to the following issues or grievances:

ARP MSP-21-689 – Replacement of orthopedic shoes – Not pursued to completion.

ARP MSP-24-374 – Request for orthopedic shower shoes – Submitted after case filed.

ARP MSP-22-40 – Request for a rolling chair – Not an issue in this case.

─────────────────────

[4] The submission and screening of the plaintiff's complaints do not constitute the beginning of the ARP process. Instead, the ARP grievance process begins when the inmate's submission is "accepted" as a grievance *after* initial screening. Inmate Handbook, Chapter VIII, Paragraph IV(H).

[5] The grievance process will also be deemed complete if more than 90 days elapses from the beginning of the process (acceptance of the grievance after screening) without issuance of a Second Step Response Form (the normal way to complete the grievance process). Inmate Handbook, Chapter VIII, Paragraph VIII(A). In the absence of a response in a step of the ARP process, the inmate may not simply wait for the 90-day deadline to expire. *Id.* Instead, for each step without a response, he must wait until the deadline for a written response for that step expires, then move to the next step in the process. *Id.* If the inmate has submitted the proper forms for each step, yet 90 days elapses without issuance of a Second Step Response Form, then he has completed the grievance process and may then seek relief in State or Federal court.

The plaintiff did not file a grievance regarding failure to provide a special diet of "double portions."

Doc. 38-1

An examination of the relevant ARP requests shows that the none of the grievances included his allegations regarding: failure to diagnose or treat pneumonia prior to his admission to Baptist Hospital–Columbus; failure to provide a biopsy of his prostate gland in 2021; or problems with his chemotherapy port between July and December 2023; or complaints about any other aspect of his treatment for cancer. Further, Torrey did not exhaust administrative remedies regarding the claim of failure timely to replace orthopedic shoes every two years because, although grievance MSP-21-689 mentions that issue, Torrey did not appeal the First Step Response to the second step of the ARP process and thus did not pursue the grievance to conclusion as required by the PLRA for proper exhaustion. Although grievance MSP-23-366 mentions – in passing – an alleged delay in having his new boots and leg braces adjusted by the provider as an "example" of delays by the medical provider, that grievance does not constitute exhaustion concerning the claim raised in the amended complaint.

The complaint regarding a delay in having his new braces and shoes adjusted by the supplier does not alert prison officials about the alleged problem of not having leg braces and orthopedic shoes replaced every two years, and there is no allegation in the amended complaint of any failure to have Torrey's new braces and shoes adjusted by the supplier. Further, including this allegation in the grievance MSP-23-366 does not constitute proper exhaustion, as Torrey did not comply with the ARP rule limiting each grievance to a single issue. Complaints about leg braces and orthopedic shoes are not related to his complaint regarding diagnosis and treatment of cancer.

In addition, Torrey's allegations regarding a high-protein diet do not appear to relate to the diagnosis and treatment of the underlying problems with his throat (cancer), did not arise until after he filed grievance MSP-23-366 – and thus could not have been included in that grievance. His original

allegation regarding difficulty in receiving chicken broth did not identify who might be responsible for that difficulty, which is not specific enough to provide officials with a fair opportunity to address the problem. In any event, Torrey stated in that grievance that the lack of broth was "*Not the issue!*" Doc. 38-1 at 20 (emphasis in original). Instead, he stated that the issue was that "the MDOC Medical Contractor causes unnecessary delays in granting a needed test and follow-up …." *Id.* at 21.

Finally, the passing mention in MSP-23-366 that Torrey experienced a delay in receiving an MRI of his back is not related to his complaint regarding throat treatment – and thus fails to comply with the "one issue" requirement of the ARP. Again, Torrey stressed that his sole issue involved only delay in obtaining a diagnosis and treatment for his throat condition. *Id.* In addition, an alleged delay in receiving an MRI does not adequately describe the allegation in his amended complaint that he received no treatment at all for his back from July 2021 to March 2024. For these reasons, Torrey has not exhausted administrative remedies for his claim regarding treatment for his back.

## Conclusion

For the reasons set forth above, the plaintiff has exhausted his administrative remedies only as to his allegation that VitalCore caused unnecessary delays in diagnosing and treating his cancer. The remaining claims set forth in his amended complaint will be dismissed without prejudice for failure to exhaust administrative remedies. In light of this ruling, all defendants in this case, except VitalCore, will be dismissed without prejudice for failure to exhaust administrative remedies.

**SO ORDERED**, this, the 2nd day of April, 2025.

/s/   David A. Sanders
UNITED STATES MAGISTRATE JUDGE

- 10 -