## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## GREENVILLE DIVISION

**CLIFTON T. TORREY, SR.**                                              **PLAINTIFF**

**v.**                                                        **No. 4:24CV20-DAS**

**VITALCORE, ET AL.**                                               **DEFENDANTS**

### MEMORANDUM OPINION

This matter comes before the court on the *pro se* prisoner complaint of Clifton T. Torrey, Sr., who challenges the conditions of his confinement under 42 U.S.C. § 1983 – which provides a federal cause of action against "[e]very person" who under color of state authority causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit.[1] The plaintiff alleges that the defendant violated the Eighth Amendment prohibition against cruel and unusual punishment by failing to timely provide diagnosis and treatment for his throat cancer.

The defendant has moved for summary judgment; the plaintiff has responded, and the parties have submitted additional briefing. For the reasons set forth below, the defendant's motion for summary judgment will be granted, and judgment will be entered in favor of the defendant in all respects.

### Summary Judgment Standard

The defendant has moved for summary judgment as to the plaintiff's allegations in this case.

---

[1] *See* 42 U.S.C. § 1997e(a); *see also Williams v. Henagan,* 595 F.3d 610 (5th Cir. 2010) (PLRA applies when inmate is incarcerated at the time he files suit, even if he was released during pendency of suit).

Summary judgment is appropriate if the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) and (c)(1). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988)).

After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck*, 204 F.3d at 633; *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998). Substantive law determines what is material. *Anderson*, 477 U.S. at 249. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, at 248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992).

The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 177

F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

### Undisputed Material Facts

Torrey was at all relevant times a prisoner in the custody of the Mississippi Department of Corrections ("MDOC") housed at the Mississippi State Penitentiary ("MSP"). Defendant VitalCore is a company that contracted with MDOC to provide medical care to prisoners in MDOC custody. Doc. 6, pp. 5-6, 11. Torrey alleges that he did not receive adequate medical care from medical personnel at MSP in a number of respects. The court granted summary judgment in favor of VitalCore on all but one of Torrey's claims because Torrey had failed to exhaust available administrative remedies for those claims before filing suit. Torrey's sole remaining claim is that medical personnel were at fault in delaying the provision of proper diagnostic procedures following his complaint of an inability to swallow food or drink beginning on February 21, 2023, and that this resulted in a delay in diagnosing and commencing treatment for esophageal cancer, which was causing the problem with swallowing. Doc. 46, p. 10; Doc. 6, p. 5-6.

Torrey alleges that his inability to swallow food began on February 21, 2023. Doc. 6, p. 6. Medical records show that he submitted a medical service request on February 24, 2023, complaining of an inability to swallow food for the previous two days. Exh. 1, p. 1. A nurse assessed Torrey that same day. Exh. 1, p. 2-5. An X-ray of the neck was ordered, and Torrey was referred for examination by a provider (physician or nurse practitioner). Decl. of Dr. Antonio Del Castillo; Exh. 2, pp. 5-6. Dr.

Antonio Del Castillo saw Torrey on March 2, 2023. Exh. 1, pp. 5-6. He noted that Torrey was taking Flexeril (cyclobenzaprine) and that the medication can affect muscles involved in swallowing; he therefore suspended the medication. He prescribed Boost drinks for nutrition and ordered a follow-up examination in one week. Exh. 1, p. 9. At that follow-up visit on March 10, 2023, Dr. Del Castillo noted that Torrey was still having dysphagia despite the discontinuance of Flexeril and that he was now complaining of problems swallowing liquids. Exh. 1, pp. 11-14. He ordered a consult for a barium swallow study and increased the Boost intake. Exh. 1, p. 13.

On March 28, 2023, Torrey had the swallow function study at North Sunflower Medical Center, which included a fluoroscopic examination of the esophagus. The radiologist noted an apparent stenosis of the esophagus and recommended a CT scan of the chest to investigate the possible stenosis. Exh. 1, pp. 15-16. That CT scan was performed on April 4, 2023, at the Bolivar Medical Center. The report noted significant thickening of the mid to distal esophagus that was concerning for an esophageal mass and recommended an endoscopy for further assessment. Exh. 1, pp. 17-18.

Dr. Del Castillo saw Torrey for a scheduled follow up on April 12, 2023. Exh. 1, pp. 19-22. He noted that Torrey had an appointment with a gastroenterologist for a potential endoscopy scheduled for April 24, 2023. Exh. 1, p. 21. Dr. Richard Goldberg at the Greenwood Gastroenterology Center examined Torrey on April 24, 2023. Exh. 1, pp. 23-24. Dr. Goldberg concluded that an esophagogastroduodenoscopy ("EGD") was indicated and noted that the next lab date was May 4, 2023. Exh. 1, p. 29. Dr. Goldberg performed an EGD on May 4. He noted findings suggestive of esophagitis and that he observed no obvious mass, and he took numerous biopsies for histological examination. Exh. 1, pp. 35-36. The pathologist's report, issued on May 9, 2023, stated

that the examination of the biopsied tissue revealed invasive carcinoma of the esophagus. Exh. 1, p. 38.

## Denial of Medical Treatment

In order to prevail on an Eighth Amendment claim for denial of medical care, a plaintiff must allege facts which demonstrate "deliberate indifference to the serious medical needs of prisoners [which] constitutes 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment . . . whether the indifference is manifested by prison doctors or prison guards in intentionally denying or delaying access to medical care . . . ." *Estelle v. Gamble*, 429 U.S. 97, 104-105, 50 L. Ed. 2d 251, 260 (1976); *Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir. 1992). The test for establishing deliberate indifference is one of "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Under this standard, a state actor may not be held liable under 42 U.S.C. § 1983 unless plaintiff alleges facts which, if true, would establish that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 838.

Only in exceptional circumstances may a court infer knowledge of substantial risk of serious harm by its obviousness. *Id.* Negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662 (1986), *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668 (1986). A prisoner's mere disagreement with medical treatment provided by prison officials does not state a claim against the prison for violation of the Eighth Amendment by deliberate indifference to his serious medical needs. *Gibbs v. Grimmette*, 254 F.3d 545 (5th Cir.2001), *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). In cases such as this, arising from delayed medical attention rather than a clear denial of medical attention, a plaintiff must

demonstrate that he suffered substantial harm resulting from the delay in order to state a claim for a civil rights violation. *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993); *Campbell v. McMillin*, 83 F. Supp. 2d 761 (S. D. Miss. 2000).

"Deliberate indifference is not established when medical records indicate that [the plaintiff] was afforded extensive medical care by prison officials." *Brauner v. Coody*, 793 F.3d 493, 500 (5th Cir. 2015). Nor is it established by a physician not accommodating a prisoner's requests in a manner he desired or the prisoner's disagreement with the treatment. *Id.*; *Miller v. Wayback House*, 253 F. App'x 399, 401 (5th Cir. 2007). To meet his burden in establishing deliberate indifference on the part of medical staff, the plaintiff "must show that [medical staff] refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Brauner*, 793 F.3d at 498.

### Torrey Received Adequate and Timely
### Medical Care from the Defendant

The well-documented chronology of Torrey's medical care reveals no evidence that anyone refused to treat him, ignored his requests for treatment, intentionally treated him incorrectly, or engaged in other conduct showing a wanton disregard for his serious medical needs. *See Brauner, supra*. To the contrary, medical staff promptly scheduled multiple examinations and tests to determine the cause of Torrey's difficulty swallowing, resulting, ultimately, to the proper diagnosis and treatment of his condition.

To summarize the Torrey's treatment, upon his initial February 21, 2023, complaint of difficulty swallowing food, within 3 days he was taken to medical, where personnel ordered an x-ray and scheduled him for an examination by a physician (which took place 6 days later). The physician took the initial step of suspending a medication that could have been causing the problem, and then (after 8 days), when the medication change did not result in improvement, the doctor referred him for

a swallow study (which took place 18 days later). Medical staff followed the swallow study radiologist's recommendation for a CT scan of the chest to investigate possible stenosis of the esophagus (which took place 7 days later) – then (8 days later) examined Torrey and followed the CT-scan radiologist's recommendation for an endoscopy by scheduling an examination by a gastroenterologist, who conducted the exam (12 days later) – and performed an EGD (10 days later) and took biopsies, resulting in the diagnosis of esophageal cancer (5 days later).

The time from Torrey's initial complaint until his diagnosis with esophageal cancer was about 2 ½ months (February 24, 2023 – May 9, 2023). After further examination and testing, his treatment began some 6 weeks later on June 28, 2023 (implanting a port device in his chest). Chemotherapy began a week after that on July 5, 2023. Indeed, based on this chronology, Torrey visited a doctor for examination or testing about every 1 to 3 weeks from his initial complaint until his cancer diagnosis.

Ultimately, the plaintiff simply disagrees with the diagnostic procedures that medical personnel chose; however, that disagreement is insufficient to support his claim for denial of adequate medical care. *See Gibson v. Collier*, 920 F.3d 212, 220 (5th Cir. 2019), ("[t]here is no Eighth Amendment claim just because an inmate believes that medical personnel should have attempted different diagnostic measures or alternative methods of treatment.") (internal quotations omitted). Further, to the extent that the plaintiff alleges negligence in his care, such an allegation does not rise to the level of a claim for denial of medical care. *See Daniels, supra.* As such, the plaintiff's allegations regarding delay of medical care for his complaint of difficulty swallowing (later revealed to be cancer) must be dismissed for failure to state a claim upon which relief could be granted.

### Torrey's Response and Additional Briefing

Torrey responded [59] to VitalCore's summary judgment, and, after VitalCore's reply [60], he submitted additional briefing [61]. As discussed below, his arguments are unavailing.

**Issues Already Dismissed**

Torrey's response and additional briefing referred to allegations already dismissed earlier in the case. The court will not revisit these issues.

**Substantive Deliberate Indifference Claim**

In addition, Torrey's response and additional briefing did nothing to rebut the well-documented chronology of his medical treatment, which, as discussed in detail above, reveals that the defendant was not deliberately indifferent to his serious medical needs. Based on the additional medical records Torrey provided, he alleges that he informed medical staff that he was initially diagnosed with an esophageal mass in February 2023. Doc. 59-1 at 1. However, Torrey, himself, verbally provided that date to staff, without documentation, and the date is contradicted by VitalCore's records showing that the mass was discovered by CT scan on April 4, 2023 – and was not confirmed to be malignant until the EGD was performed on May 4, 2023, and was reviewed by a pathologist on May 9, 2023 (the day before Torrey was informed of it). Doc. 58, p. 9 and n. 9. The plaintiff's additional records simply do not support his claim of deliberate indifference by the MSP medical staff.

**No Evidence of a Policy Driving the Alleged Deliberate Indifference**

Torrey alleges, without proof, that "apparently" VitalCore maintains a policy to have nurses set up appointments for off-site medical care. It is unclear why this might exhibit deliberate indifference or how it could have caused his alleged injuries. He alleges that VitalCore "made a habit of delaying [off-site] treatment," which does not support his summary judgment burden regarding VitalCore policy or custom, as he has not shown that this assertion is based on his personal knowledge. In any event, he has offered no evidence to show that the defendant followed such a policy or custom in providing his medical care.

- 8 -

Torrey argues that VitalCore thwarted his ability to provide such proof because the defendant did not provide him with its policies.  However, VitalCore provided the discovery set forth in the court's standard Scheduling Order (which did not include medical care policies), and Torrey's motion [47] for additional discovery did not include a request for production of VitalCore policies.

## Conclusion

For the reasons set forth above, the motion by the defendant for summary judgment will be granted, and judgment will be entered for the defendant in all respects.  A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 23rd day of September, 2025.

/s/   David A. Sanders
UNITED STATES MAGISTRATE JUDGE